IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| FREEDOM WATCH, INC. | ) | |
| 201 Massachusetts Avenue, NE | ) | |
| Washington, DC 20002 | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 - |
| THE HONORABLE BARACK OBAMA | ) | |
| President of the United States of America | ) | |
| The White House | ) | |
| 1600 Pennsylvania Avenue, NW | ) | |
| Washington, D.C. | ) | |
| As De Facto Chairman of the | ) | |
| Defendant Advisory Committee, | ) | |
| and, | ) | |
| | ) | |
| OBAMA HEALTH REFORM | ) | |
| DE FACTO ADVISORY COMMITTEE | ) | |
| c/o Eisenhower Executive Office Building | ) | |
| Washington, DC 20501 | ) | |
| and | ) | |
| | ) | |
| JOHN AND JANE DOE NOS. 1-99, | ) | |
| Certain Unknown Non-Federal Employees, | ) | |
| and/or Members of the Obama Health | ) | |
| Reform De Facto Advisory Committee, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

COMPLAINT

Plaintiff, Freedom Watch, Inc., hereby files this complaint for compliance with the Federal Advisory Committee Act, 5 U.S.C. App. 2 ("FACA"), and the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), which  is incorporated into FACA.  As grounds therefore, Plaintiff respectfully alleges as follows:

JURISDICTION AND VENUE

1.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2) (United States as defendant), and 5 U.S.C. § 552(a)(4)(B) (FOIA).

2.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

PARTIES

3.      Plaintiff, whose principal place of business is 201 Massachusetts Avenue, NE, Washington, D.C. 20002,  is organized as a non-profit corporation under the laws of the District of Columbia.  Plaintiff undertakes educational and other program, files lawsuits and uses other legal means to promote and protect the public interest in matters of public concern.  To this end, Plaintiff requested certain documents pursuant to the FACA and FOIA and intends to disseminate the requested information and documents to its supporters and benefactors, government officials, appropriate news media, and to the American public at large.  The information, access, and documents Plaintiff seeks are likely to contribute significantly to the public's understanding of the operations and activities of Defendant Obama Health Reform De Facto Advisory Committee.

4.      Defendant Obama Health Reform De Facto Advisory Committee ("OHRDFAC") is an agency and entity of the United States Government.  Defendant OHRDFAC was created and is headed by President Barack H. Obama to develop a national health-care plan and policy and to design and implement legislation that is intended, at its endpoint, to socialize the American health care system.  Defendant OHRDFAC has its principal place of business in Washington, DC.  Defendant OHRDFAC has possession of the information and documents to which Plaintiff

seeks access.

5.      Defendant Barack H. Obama ("Obama") is the President of the United States.  Defendant

Obama is the director of OHRDFAC and has possession of the information and documents to

which Plaintiff seeks access.

6.      John and Jane Does Nos. 1-99 are currently unknown, non-federal employees who are

members of the OHRDFAC and have possession of the information and documents to which

Plaintiff seeks access. One of these Does is believed to be the so-called U.S. Preventative

Services Task Force, and a demand is being served on this entity. This complaint will thus be

amended once the case is ripe to file.

## STATEMENT OF FACTS

7.      Since taking the oath of office in January 2009, President Obama has established and

directed the OHRDFAC, with the goal of gathering information and negotiating agreements that

will lead to the passage of  President Obama's proposed Health Reform legislation.

8.      In this regard, it has been widely reported and disclosed by the national media, including

but not limited to The Washington Post, that non-federal employees, including lobbyists from

the private pharmaceutical industry (i.e. Pharma), Planned Parenthood, the U.S. Chamber of

Commerce, the American Association of Retired Persons (AARP), the American Medical

Association (AMA), and other private lobbyists (John and Jane Does 1-99), regularly attended

and fully participated in non-public meetings of the OHRDFAC as if they were members of the

OHRDFAC, and, in fact, were members of the OHRDFAC.

9.      Recent history has unfortunately seen several ethical lapses and outright illegalities

concerning conflicts of interest in The White House and violations of the FACA.  In *Association

of American Physicians and Surgeons v. Clinton*, 997 F.2d 898 (D.C. Cir. 1993) ("AAPS"), the
U.S. Circuit Court for the District of Columbia remanded the case to the district court for

discovery on the issue of whether the working group of the President's Task Force on National

Health Care Reform constituted an advisory committee under FACA, despite sworn claims by

one of the heads of the Task Force put forth by the Clinton-Gore Justice Department that it did

not so qualify.  In ordering this discovery to proceed, the U.S. Circuit Court for the District of Columbia stated:

We simply have insufficient material in the record to determine the character of the working

 group and its members...[A]s we have indicated, because we differ with the district court

 concerning the Task Force, we believe further proceedings, including expedited discovery, are

 necessary before the district court can confidently decide whether the working group is a FACA

 committee.  AAPS, 997 F. 2d at 915-916.  When discovery proceeded in the district court,

plaintiffs uncovered facts which conclusively showed that the working group of the Task Force

 did qualify as an advisory committee under the FACA.  The White House was sanctioned for, in

 part, failing to comply with discovery requests concerning the applicability of the FACA, and

 for misleading the court about who was and who was not a member of former First Lady Hillary

 Rodham Clinton's Health Care Task Force.

The Department of Justice has a long tradition of setting the highest standards of conduct for all

 lawyers, and it is a sad day when this court must conclude, as did the United States Attorney in

 his investigation, that the Department of Justice succumbed to pressure from White House

 attorneys and others to provide this court with "strained interpretations" that were "ultimately

 unconvincing."  This court goes further than the United States Attorney, however, because this

 court cannot agree that the Department of Justice never relied upon the "all-employee"

 exemption for the working group.  Having been presented the "all-employee" facts in the

 Magaziner declaration, the Court of Appeals specifically found that defendants had made that

 argument.  Neither the briefs on appeal, nor any transcript of the oral argument on appeal, was

 before this court.  Yet the Department of Justice sat back and never told this court that it was not

 making, and had not made, such an argument, and never corrected any of the factual

inaccuracies in the Magaziner declaration.  The United States Attorney reported that this was a

conscious decision because attorneys in the White House refused to allow any supplemental

information to be provided to the court.  It seems that some government officials never learn that

the cover-up can be worse than the underlying conduct.  Most shocking to this court, and deeply

disappointing, is that the Department of Justice would participate in such conduct.  This was not

an issue of good faith word games being played with the court.  The United States Attorney

found that the most controversial sentence of the Magaziner declaration -- "Only federal

government employees serve as members of the interdepartmental working group" -- could not

be prosecuted under the perjury statute because the issue of "membership" within the working

group was a fuzzy one, and no generally agreed upon "membership" criteria were ever written

down.  Therefore, the Magaziner declaration was actually false because of the implication of the

declaration that "membership" was a meaningful concept and that one could determine who was

and was not a "member" of the working group.  This whole dishonest explanation was provided

to this court in the Magaziner declaration on March 3, 1993, and this court holds that such

dishonesty is sanctionable and was not good faith dealing with the court or plaintiffs' counsel.  It

was not timely corrected or supplemented, and this type of conduct is reprehensible, and the

government must be held accountable for it.  AAPS, 989 F. Supp. 8, 16-17 (D.D.C. 1997).


In light of this history, Plaintiff believes it is particularly in the public interest for Obama

Administration officials and the OHRDFAC to avoid even an appearance of a possible conflict

of interest and illegality, by acknowledging the application of FACA and the FOIA to all

OHRDFAC meetings, functions and activities.

10.      On December 16, 2009, Plaintiff hand-delivered a letter to President Obama, pursuant to

the provisions of the FOIA and the FACA, 5 U.S.C. §§ 552 and App.2, requesting copies of all

minutes and final decision documents of OHRDFAC meetings from the inception of

OHRDFAC to the present, as well as a complete listing, including addresses, of all persons and

entities that participated in OHRDFAC meetings, either directly or indirectly through agents

and/or intermediaries.  See December 16, 2009 Letter to The Hon. Barack Obama, attached as

Exhibit 1 and incorporated herein by reference.  Plaintiff also sought to attend all future

meetings of the OHRDFAC pursuant to the FACA, and asked to be provided with future

meeting schedules and contact information so that representatives of Plaintiff could attend these

meetings. Egregiously, upon hand delivering the letter to the Secret Service, agents of the

President, the undersigned  Chairman and General Counsel of Freedom Watch was illegally

detained on December 16, 2009, at the front gate of The White House, while he was on the

sidewalk (he had never entered The White House grounds), questioned for over an hour in

below freezing temperatures, and berated, harassed and threatened by two of the President's

Uniformed Secret Service agents for his public advocacy and he was investigated; that is, these

two Uniformed Secret Service agents violated the exercise of First Amendment freedom of

speech rights and privacy rights.  Fortunately, after over an hour of interrogation, false

imprisonment, and violation of his civil rights, a very professional female line Secret Service

agent appeared and in an appropriate and very respectful and kind manner set the undersigned

free.  The only positive aspect of this "affair" was that the President's agents took the letter for

the President. Id.  However, Plaintiff's request was later denied in its entirety.

11.      Along with Plaintiff, the GAO, and various members of the media, legal commentators

have advocated a broad reading of the FACA's language which on its face covers a vast number

of communications between agencies and non-governmental parties. In a widely cited article on

the FACA, Michael H. Cardozo reasons:

In principle, any group of individuals, however selected or constituted, that considers

governmental matters and furnishes views and conclusions to government officials or agencies,

is a governmental advisory committee.  The FACA however, is concerned only with "public

advisory committees," that is groups containing at least some members who are not government

employees.  Thus a committee containing any number of officers of government is not covered

by the Act unless its membership includes outsiders, representatives of the "private sector."

Michael H. Cardozo, "The Federal Advisory Committee Act In Operation (Administrative Law

Review, Vol. 33, 3 (1981) (emphasis added).  Mr. Cardozo further reasons:

A key part of the definition of "advisory committee" is the expression "established or utilized."

Superficially this means that the origin of the group is not material in determining whether it is

an advisory committee covered by the act. It must be a "group," however, meaning more than

one person, and someone must bring them together. That act, whether done formally or

informally, "establishes" the group.  However the Act does not expressly require the

establishment to be performed by a government official or agency.  Under the strict language of

the Act, even a group formed by private industry becomes an advisory committee if it is

"utilized" by the president or by one or more agencies of the government.  Id. at 12-13.

(Emphasis added.)  Categorizing the types of advisory committees, Mr. Cardozo writes: "A

committee in any of the five functional categories may be assigned an 'operational' as well as an

'advisory' responsibility.  Id. at 32.  Examples of the types of advisory committees include those

which provide: (1) policy advice; (2) technical advice; and (3) fact finding. Id. at 33, 37, 39.

(Emphasis added.) See Washington Legal Foundation  v.  U.S. Department of Justice, 491 U.S.

440 (1988) (Supreme Court held the Standing Committee on the Federal Judiciary of the

American Bar Association to be a federal advisory committee even though it was not formally

designated as such by the President, since it was a private entity providing advice to the

President on judicial nominees).


COUNT I

(Violation of the Federal Advisory Committee Act)

12.     Plaintiff incorporates by paragraphs 1-11 as if fully set forth herein.

13.     The OHRDFAC is a federal advisory committee as defined under the FACA, 5 U.S.C.
App.2, and as such is required to comply with all provisions of that law, including, but not
limited to, filing a charter, allowing interested persons--such as Plaintiff--to attend and have
input at meetings of the OHRDFAC, producing documents and other things and having open
meetings in accordance with the FOIA, 5 U.S.C. § 552, publishing notice of all future meetings
in the federal register, and having a board that is fairly balanced in terms of the points of view
represented.

14.     Plaintiff has made a request to the OHRDFAC that representatives of Plaintiff be
allowed to attend and participate in meetings of the OHRDFAC, that they be given copies of
certain OHRDFAC documents, and the OHRDFAC appoint at least one person with a different
point of view, among other matters.  See Exhibit 1.

15.     Defendant OHRDFAC has failed and refused to accede to Plaintiff's request.

16.     The failure of Defendants to comply with the FACA has harmed Plaintiff in that Plaintiff
has as one of its primary functions the monitoring and safeguarding of the public trust and
interest.  The activities of the Defendants in this case have deprived Plaintiff of its right, granted
by the FACA, to participate in meetings held by the OHRDFAC, to have advance notice of those
meetings, to obtain documents generated by the OHRDFAC, and to have a voice in the affairs of
the OHRDFAC. The acts of Defendants have thus frustrated Plaintiff's ability to effectively
carry out its purpose of promoting and protecting justice and social welfare, including, among
other things, preventing abuse and violation of the public trust and interest by federal officers,
officials, employees, agents, and/or persons acting in concert with them.

17.     As an interested party and a representative of the public, Plaintiff has been and continues
to be damaged by the operations of the OHRDFAC. Public confidence in the integrity of the
Presidency and the executive branch as a whole has been and will be harmed by the appearance
that the President and the Obama Administration as a whole are under the influence of, or are
promising favors to, a select few pharmaceutical, so called abortion rights activists, medical and
business entities, many of whom contributed heavily to the Obama Administration in the 2008
Presidential election cycle. Members of Defendant OHRDFAC also gain influence or favor with

the executive branch to the detriment of others who do not participate in the OHRDFAC.

18.     Plaintiff will continue to suffer permanent and irreparable injury unless operation of the OHRDFAC is brought into compliance with the provisions of the FACA.

WHEREFORE, Plaintiff prays: (1) that Defendant OHRDFAC be found in violation of the FACA and that Defendants be enjoined, pursuant to Rule 65 of the Federal Rules of Civil Procedure, from holding meetings while it continues to be in violation of the FACA; (2) that, pursuant to 28 U.S.C. §1361 and other applicable laws, a writ of mandamus issue compelling Defendant OHRDFAC to comply with the FACA; (3) that Defendants be ordered to disclose and provide to Plaintiff the information and documents requested by Plaintiff's request; and (4) that Plaintiff be awarded the attorneys fees and costs of bringing this suit, as well as any and all other relief the Court deems proper.

## COUNT II

(Violation of the Freedom of Information Act Provisions Incorporated Into FACA)

19.     Plaintiff incorporates paragraphs 1-11 as if fully set forth herein.

20.     Plaintiff filed with Defendant on December 16, 2009 via hand delivery, a FOIA request (see Exhibit 1) in the form of a letter to President Barack Obama, requesting access to certain records under FOIA.  Access was requested to "copies of all minutes and final decision documents of OHRDFAC meetings from the inception of OHRDFAC to the present, as well as a listing (including addresses) of all persons and entities that participated in OHRDFAC meetings, either directly or indirectly through agents and/or intermediaries," among other items.

21.     Defendant Obama has failed and refused to comply with Plaintiff's request.

22.     Pursuant to 5 U.S.C. § 552(a)(6)(C) and 5 U.S.C. § 552(a)(6)(E)(ii)(I), Plaintiff shall be deemed to have exhausted its administrative remedies with respect to its request to Defendant.

23.     Pursuant to 5 U.S.C. § 552(a)(3), Plaintiff has a right of access to the information and documents requested in its FOIA request, and Defendants have no legal basis for refusing to disclose this information and these documents to Plaintiff.

WHEREFORE, Plaintiff prays that this Court: (1) declare that Defendants' refusal to disclose the information and documents requested by Plaintiff is unlawful; (2) order Defendants to make the requested information and documents available to Plaintiff; (3) grant Plaintiff's request for a fee waiver; (4) award Plaintiff its costs and reasonable attorneys' fees in this action; and (5) grant such other and further relief as the Court may deem just and proper.

                                                            Respectfully submitted,

FREEDOM WATCH, INC.

_____

Larry Klayman, Esq.
D.C. Bar No. 334581
201 Massachusetts Avenue NE
Washington, D.C. 20002

(310) - 595-0800

Attorneys for Plaintiff