UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                  )
FREEDOM WATCH, INC.,              )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     Civil Action No. 09-2398 (RWR)
                                  )
BARACK OBAMA et al.,              )
                                  )
          Defendants.             )
_____)

MEMORANDUM OPINION AND ORDER

     Plaintiff Freedom Watch brings this action against the
President of the United States, an entity styled in the complaint
as the Obama Health Reform De Facto Advisory Committee, and the
unknown non-federal employee members of the committee, alleging
that the committee was subject to and failed to comply with the
requirements of the Federal Advisory Committee Act ("FACA"),
codified at 5 U.S.C. app. 2.  The defendants have moved to
dismiss the complaint for lack of subject-matter jurisdiction and
for failure to state a claim upon which relief can be granted.[1]
Although the FACA does not provide a private right of action to
enforce its provisions, and Freedom Watch cannot proceed under
the Administrative Procedure Act ("APA"), Freedom Watch has
alleged sufficiently that the committee at issue qualifies under

_____

     [1] The defendants' motion to dismiss Freedom Watch's Freedom
of Information Act claim previously was granted as conceded.

the FACA as an advisory committee and may be entitled to mandamus relief.  The defendants' motion to dismiss therefore will be granted with respect to the Freedom Watch's FACA and APA claims and denied with respect to Freedom Watch's claim for mandamus review against the President.

BACKGROUND

Freedom Watch alleges that the President established a committee to gather information and negotiate agreements in support of proposed health reform legislation enacted in 2010 as the Patient Protection and Affordable Care Act, Pub. L. 111-148, and the Health Care and Education Reconciliation Act of 2010, Pub. L. 111-152 ("ACA" collectively).  (Compl. ¶ 7.)  Freedom Watch seeks access to the minutes and decisions of the committee and a listing of all individuals who attended or participated in any committee meetings.  Additionally, Freedom Watch seeks advance notice of, and the ability to participate in, any future meetings and the appointment of "at least one person with a different point of view" to the committee.[2]  (Id. ¶¶ 10, 13-

---

[2] If the committee has stopped meeting in the wake of Congress passing and the President signing the ACA, Freedom Watch's claims for access to meetings and a change in the composition of the committee may be moot.  See United States v. Philip Morris USA Inc., 566 F.3d 1095, 1135 (D.C. Cir. 2009) (noting that a case becomes moot if it is "'impossible for the court to grant any effectual relief whatever to the prevailing party'" because "'there is no reasonable expectation that the wrong will be repeated'" (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000))).  The parties will be ordered to brief the issue of whether the alleged committee has ceased all meetings

14.)  The defendants have moved to dismiss under Federal Rule of
Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction
and under Rule 12(b)(6) for failure to state a claim, arguing
that the FACA does not provide a private right of action, and
arguing under Rule 12(b)(6) that the committee is not an advisory
committee as defined by the FACA.  (Defs.' Mem. of Law in Supp.
of Defs.' Mot. to Dismiss Count I of the Compl. ("Defs.' Mem.")
at 3, 4 n.2, 7.)  The defendants also argue that applying the
FACA here would unconstitutionally burden the President's ability
to communicate confidentially with his advisors.  (Id. at 11-12.)

DISCUSSION

"On a motion to dismiss for lack of subject-matter
jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the
burden of establishing that the court has subject-matter
jurisdiction."  Larsen v. U.S. Navy, 486 F. Supp. 2d 11, 18
(D.D.C. 2007); see also Moms Against Mercury v. FDA, 483 F.3d
824, 828 (D.C. Cir. 2007).  "A Rule 12(b)(6) motion tests the
legal sufficiency of a complaint[.]"  Browning v. Clinton, 292
F.3d 235, 242 (D.C. Cir. 2002).  In considering a motion to
dismiss for failure to state a claim under Rule 12(b)(6), a court

---

relating to the ACA and Freedom Watch's claims are moot.
See Ctr. for Arms Control and Non-Proliferation v. Redd, Civil
Action No. 05-682 (RMC), 2005 WL 3447891, at *5 (D.D.C. Dec. 15,
2005) (finding claim under the FACA moot where the commission
from which the plaintiff sought records no longer existed and did
not maintain control over the records sought).

must construe the complaint in the light most favorable to the plaintiff, id., and "the court must assume the truth of all well-pleaded allegations." Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).

## I.    PRIVATE RIGHT OF ACTION

The mere "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chi., 441 U.S. 677, 688 (1979). Rather, "private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). For a cause of action to exist, a plaintiff must demonstrate that the statute under which it is attempting to proceed reflects Congressional intent to create a private remedy. See id. It is irrelevant that a private right of action may be desirable as a policy matter or compatible with the statute. See id. at 287. The "judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id. at 286. Judicial creation of a private right of action conflicts with "'the authority of Congress under Art. III to set the limits of federal jurisdiction.'" Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 165 (2008) (quoting Cannon, 441 U.S. at 747 (Powell, J., dissenting)).

In the wake of <u>Sandoval</u>, several courts in this district
have determined that the FACA does not create a private right of
action because there is no evidence of Congressional intent to
confer a private remedy for FACA violations.  <u>See</u> <u>Judicial Watch,</u>
<u>Inc. v. U.S. Dep't of Commerce</u>, 736 F. Supp. 2d 24, 30 (D.D.C.
2010) ("Because the FACA does not explicitly confer a private
remedy, . . . and because this fact alone is 'determinative,' the
court holds that the FACA does not provide the plaintiff with a
private right of action." (internal citation omitted)); <u>Judicial</u>
<u>Watch, Inc. v. Nat'l Energy Policy Dev. Grp.</u>, 219 F. Supp. 2d 20,
33 (D.D.C. 2002) (stating that "[n]othing in the language of FACA
evidences any intent" to create a private remedy).  Freedom Watch
has pointed to no authority that could provide a basis for
concluding that Congress did, in fact, intend to confer in the
FACA a private right of action.  Accordingly, Freedom Watch
cannot proceed here under the FACA alone.[3]

Freedom Watch argues that it is alternatively "entitled to
enforce FACA's substantive requirements through the judicial
review provisions of the APA." (Pl.'s Opp'n to Defs.' Mot. to
Dismiss Count One of Pl.'s Compl. at 3.)  Plaintiffs alleging
violations of the FACA may proceed under the jurisdictional grant

---

[3] Whether the question addresses the power of the court to
adjudicate a private action brought under the FACA, or the
availability of any relief under the FACA for such a claim, the
result is the same.

in the APA, 5 U.S.C. § 704, which subjects "final agency action

for which there is no other adequate remedy" to judicial review.

See <u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 736 F. Supp.

2d at 30-31 (surveying other cases and noting that "a number of

courts have allowed plaintiffs to proceed with APA actions based

on alleged FACA violations"); <u>Nat'l Energy Policy Dev. Grp.</u>, 219

F. Supp. 2d at 36-40.  The APA provides "a limited cause of

action for parties adversely affected by agency action."[4]

<u>Trudeau v. FTC</u>, 456 F.3d 178, 185 (D.C. Cir. 2006).

　　An entity cannot be at once both an advisory committee and

an agency, however.  <u>See</u> <u>Heartwood, Inc. v. U.S. Forrest Serv.</u>,

431 F. Supp. 2d 28, 36 (D.D.C. 2006) (noting that an "'advisory

committee cannot have a double identity as an agency'" (internal

quotation marks omitted) (quoting <u>Wolfe v. Weinberger</u>, 403 F.

Supp. 238, 242 (D.D.C. 1975))); <u>Gates v. Schlesinger</u>, 366 F.

Supp. 797, 798-99 (D.D.C. 1973) ("The [FACA] utilizes the

definition of agency contained in the [APA] . . . .  It is

---

[4] However, that does not sanction proceeding here under the
APA against the President.  While the APA's definition of agency
does not explicitly exclude the President, 5 U.S.C. § 701(b)(1),
in the face of such "textual silence[,]" "respect for the
separation of powers and the unique constitutional position of
the President" warrants exempting the President from the
provisions of the APA.  <u>Franklin v. Massachusetts</u>, 505 U.S. 788,
800 (1992); <u>see also</u> <u>Natural Res. Def. Council, Inc. v. U.S.
Dep't of State</u>, 658 F. Supp. 2d 105, 109 (D.D.C. 2009) ("Because
the President is not an 'agency' for purposes of the APA,
presidential action is not subject to judicial review under that
statute.").

significant that the [FACA] contains a separate and distinct definition of an 'advisory committee,' thus supporting the proposition that an advisory committee is not an 'agency.'" (footnote omitted)).  Because Freedom Watch argues that the committee at issue is an advisory committee subject to the requirements of the FACA, the committee cannot also qualify as an agency for the purposes of APA review.  Thus, the APA does not provide a jurisdictional grant for Freedom Watch's FACA claim against the committee or its members, and the defendants' motion to dismiss will be granted with respect to Freedom Watch's APA claim.

However, Freedom Watch also seeks in its complaint mandamus relief under 28 U.S.C. § 1361.  This provision creates subject-matter jurisdiction over an action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "[T]he mandamus statute may provide an avenue to remedy violations of statutory duties even when the statute that creates the duty does not contain a private cause of action."  Nat'l Energy Policy Dev. Grp., 219 F. Supp. 2d at 41-42 (citing Chamber of Commerce v. Reich, 74 F.3d 1322, 1327 (D.C. Cir. 1996) (if "a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action")).  If a federal

official -- including the President -- has a clear obligation to perform a duty, <u>Nat'l Wildlife Fed'n v. United States</u>, 626 F.2d 917, 923 (D.C. Cir. 1980), the plaintiff has a clear right to relief, and there is no other adequate remedy available to the plaintiff, a court may grant mandamus relief. <u>Council of and for the Blind of Del. Cnty. Valley, Inc. v. Reagan</u>, 709 F.2d 1521, 1533 (D.C. Cir. 1983). "[I]f there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action. To this extent, mandamus jurisdiction under § 1361 merges with the merits[,]" <u>In re Cheney</u>, 406 F.3d 723, 729 (D.C. Cir. 2005), and will be assessed by whether the claim is sufficiently pled.

II. SUFFICIENCY OF CLAIM

The defendants address the merits of Freedom Watch's claim for mandamus review by arguing that Freedom Watch has not alleged sufficient facts from which to conclude that the committee at issue here qualifies as an advisory committee under the FACA. (Defs.' Mem. at 9.) As relevant to the claim at issue here, the FACA defines an advisory committee as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is . . . established or utilized by the President[.]" 5 U.S.C. app. 2 § 3(2). Although the FACA's definition of an advisory committee covers many groups, it does not extend to

"every formal and informal consultation between the President
. . . and a group rendering advice." Pub. Citizen v. U.S. Dep't
of Justice, 491 U.S. 440, 453 (1989). Because "a group is a FACA
advisory committee when it is asked to render advice or
recommendations, as a *group*, and not as a collection of
individuals[,]" "an important factor in determining the presence
of an advisory committee [is] the formality and structure of the
group." Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton, 997
F.2d 898, 913-14 (D.C. Cir. 1993) ("AAPS"). Criteria relevant to
determining if a group has sufficient formality and structure to
qualify under the FACA as an advisory committee include whether
the group has 1) an organized structure, 2) a fixed membership,
and 3) a specific purpose. Id. at 914. However, groups vary
widely with respect to these features, falling on a continuum:

> At one end one can visualize a formal group of a
> limited number of private citizens who are brought
> together to give publicized advice as a group.  That
> model would seem covered by the statute regardless of
> other fortuities such as whether the members are called
> "consultants."  At the other end of the continuum is an
> unstructured arrangement in which the government seeks
> advice from what is only a collection of individuals
> who do not significantly interact with each other.
> That model . . . does not trigger FACA.

Id. at 915. Additionally, by definition, an advisory committee
cannot be "composed wholly of full-time, or permanent part-time,
officers or employees of the Federal Government[.]" 5 U.S.C.
app. 2 § 3(2). "[A] committee is composed wholly of federal
officials if the President has given no one other than a federal

official a vote in or, if the committee acts by consensus, a veto

over the committee's decisions." Cheney, 406 F.3d at 728.

The complaint alleges that the committee exists to "gather[]

information and negotiat[e] agreements that will lead to the

passage of President Obama's proposed Health Reform legislation"

(Compl. ¶ 7), suggesting that the committee has a specific

purpose. Freedom Watch claims that "non-federal employees,

including lobbyists from the private pharmaceutical industry

(i.e. Pharma), Planned Parenthood, the U.S. Chamber of Commerce,

the American Association of Retired Persons (AARP), the American

Medical Association (AMA), and other private lobbyists . . .

regularly attended and fully participated" in committee meetings.

(Compl. ¶ 8.) This description suggests that the committee has a

fixed membership. While the complaint does not describe the

committee's structure, the defendants cite no authority for the

proposition that a complaint pleading a cause of action under the

FACA must detail each of the three factors enumerated in AAPS in

order to state a claim for relief.[5] Rather, Rule 8 does not

---

[5] Each of the cases that the defendants cite in support of
their argument that Freedom Watch's allegations are insufficient
to establish that the committee has the requisite formality and
structure to qualify as an advisory committee under the FACA
considered the issue on a motion for summary judgment, where the
defendants provided evidence that the challenged committees did
not satisfy the requirements. See Citizens for Responsibility &
Ethics in Wash. v. Leavitt, 577 F. Supp. 2d 427, 432-33 (D.D.C.
2008) (considering declaration on motion for summary judgment to
conclude that the committee in question did not qualify as an
advisory committee); Am. Soc'y of Dermatology v. Shalala, 962 F.

require a plaintiff to plead in the complaint all facts that are needed to prove its claims, and Freedom Watch has plausibly alleged the existence of an advisory committee that may be subject to the requirements of the FACA.  See <u>Rouse v. Berry</u>, 680 F. Supp. 2d 233, 236 (D.D.C. 2010) ("[A] complaint needs to plead 'only enough facts to [nudge] a claim to relief . . . across the line from conceivable to plausible[.]'" (alterations in original) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007))).

The defendants also argue, citing <u>Cheney</u>, 406 F.3d at 728, that Freedom Watch has not pled facts that establish that any non-government employees were members of the committee.  (Defs.' Mem. at 11.)  However, the complaint alleges that individuals not employed by the federal government fully participated in and were members of the committee (Compl. ¶ 8), and <u>Cheney</u> noted that an identical allegation could be viewed "as alleging that non-federal employees had the right to vote on, or to veto," decisions during committee meetings.  406 F.3d at 729.  While <u>Cheney</u> ultimately concluded that the committee at issue did not qualify as an advisory committee, it did so on the basis of a statement the plaintiff attached to the complaint that listed as

Supp. 141, 148 (D.D.C. 1996) (same); <u>Nader v. Baroody</u>, 396 F. Supp. 1231, 1234 (D.D.C. 1975) (same).  The defendants have not provided any evidence with their motion -- in the form of declarations or otherwise -- from which to conclude that the entity at issue here lacks the requisite structure or formality to qualify as an advisory committee.

members of the committee only federal employees. <u>Id.</u> at 729-30.
There is no comparable basis for concluding that the members of
the entity at issue here all were federal employees -- Freedom
Watch alleges that multiple non-federal employees are members of
the committee, and the government has provided no evidence that
only federal employees served on the committee.  Thus, the
defendants' motion to dismiss will be denied with respect to
Freedom Watch's claim for mandamus review against the President.

III. SEPARATION OF POWERS

Finally, the defendants argue that applying the FACA to a
task force set up by the President to solicit advice would raise
separation of powers concerns by infringing on the President's
ability to receive confidential counsel.  (Defs.' Mem. at 12.)
Although "the lines between the powers of the three branches [of
government] are not always neatly defined[,]" the Constitution
safeguards against the "'encroachment or aggrandizement of one
branch at the expense of the other.'"  <u>Clinton v. Jones</u>, 520 U.S.
681, 699-701 (1997) (quoting <u>Buckley v. Valeo</u>, 424 U.S. 1, 122
(1976)).  In determining whether the FACA "disrupts the proper
balance between the coordinate branches, the proper inquiry
focuses on the extent to which [a statute] prevents the Executive
Branch from accomplishing its constitutionally assigned
functions."  <u>Nixon v. Adm'r of Gen. Servs.</u>, 433 U.S. 425, 443
(1977).  If the defendants could demonstrate that applying the

FACA would disrupt Executive Branch functions, the inquiry would then turn to whether "that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." Id.

"While no clause of Article II expressly grants the President the power to acquire information or receive advice in confidence, the necessity of receiving confidential advice appears to flow from Article II." Nat'l Energy Policy Dev. Grp., 219 F. Supp. 2d at 50. Additionally, the Supreme Court and D.C. Circuit have both suggested that applying the FACA to allow a plaintiff to obtain communications between the President and his advisors may be unconstitutional. See Public Citizen, 491 U.S. at 466 (noting the "formidable constitutional difficult[y]" posed by the possibility that the FACA "violated the doctrine of separation of powers"; AAPS, 997 F.2d at 909 (suggesting that the FACA may interfere with the President's Article II "ability to consult with his advisers confidentially[,]" and "to organize his advisers and seek advice from them as he wishes").

However, a court should avoid reaching constitutional issues that are not strictly necessary to decide a case. See Burton v. United States, 196 U.S. 283, 295 (1905); see also Clinton, 520 U.S. at 690 (noting that "the importance of avoiding the premature adjudication of constitutional questions . . . is applicable to the entire Federal Judiciary"). Here, Freedom

Watch's entitlement to any of the committee's communications turns on whether, beyond this pleading stage, Freedom Watch can present evidence sufficient to demonstrate that the committee qualifies under the FACA as an advisory committee. If the government presents evidence demonstrating that the committee at issue does not qualify under the FACA as an advisory committee, the case can be resolved on that statutory ground without reaching the constitutional question. See Nat'l Energy Policy Dev. Grp., 219 F. Supp. 2d at 54-55.

CONCLUSION

The FACA creates no private right of action and the APA provides none under which the plaintiff may bring a FACA claim on the facts alleged here. However, Freedom Watch has alleged sufficiently in its complaint that the committee here was an advisory committee under the FACA, Freedom Watch may be entitled to mandamus review against the President, and dismissing the complaint on separation of powers grounds would be premature. Accordingly, it is hereby

ORDERED that the defendants' motion [7] to dismiss be, and hereby is, GRANTED with respect to the plaintiff's FACA and APA claims, and DENIED with respect to the plaintiff's claim for mandamus review against the President. It is further

ORDERED that the parties file by September 26, 2011 supplemental memoranda addressing the issue of whether Freedom

Watch's claims for access to meetings and to change the
composition of the committee are moot.

    SIGNED this 12th day of August, 2011.


                                _____/s/_____
                                RICHARD W. ROBERTS
                                United States District Judge